# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

IN RE:                                    :
                                          :
PINE FOREST ASSOCIATES, LP                :        CASE NO. 1:18-bk-15814-NWW
                                          :
           Debtor                         :        Chapter 11 Proceedings

## DISCLOSURE STATEMENT
## OF PINE FOREST ASSOCIATES, LP

Brent James
Harriss & Hartman Law Firm, P.C.
P. O. Drawer 220, 200 McFarland Bldg.
Rossville, GA  30741
Telephone: (706) 861-0203
Facsimile: (706) 861-6838
GA Bar No. 388855
Attorney for Debtor

## ARTICLE I.
## INTRODUCTION

PINE FOREST ASSOCIATES, LP ("Pine Forest"), Debtor-in-possession in the above-styled bankruptcy case (hereinafter referred to as "Debtor"), submits the Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* (Bankruptcy Code"), to disclose information to enable creditors and other parties in interest entitled to vote (if any) ("Claimants") to make an informed decision in exercising their rights to accept or reject the Plan of Reorganization of Pine Forest Associates, LP. (the "Plan"). The United States Bankruptcy Court for the Eastern District of Tennessee, Southern Division ("Bankruptcy Court"), pursuant to Section 1128 of the Bankruptcy Code, has scheduled a hearing to consider the confirmation of the Plan ("Hearing") for _____, 2019, at _____a.m., U. S. Historic Courthouse, 31 East 11th Street, Chattanooga, Tennessee. The Bankruptcy Court has directed that, on or before_____a.m., Eastern Time on _____, 2019, ballots for the acceptance or rejection of the Plan are required to be submitted in writing by the holders of all classes of claims and interests that are impaired under the Plan. (A Claimant whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan is considered ("impaired"). Claimants in impaired class 3 (see Article VI, below for a description of these classes) may vote on the Plan by completing and mailing the enclosed ballot to:

Clerk, United States Bankruptcy Court
31 East 11th Street
Chattanooga, Tennessee 37402

with a copy to:

Brent James
P. O. Drawer 220
Rossville, GA   30741

TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY 4:30 p.m. EASTERN TIME ON _____, 2019.

As a Claimant, your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a consensual plan of reorganization that each class of Claimants that is impaired under the plan accept the plan.   The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more the one-half in number of the claims of that class that cast ballots for acceptance or rejection of the plan. A class of interests has accepted a plan if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests that has accepted or rejected such plan.

1.

Liabilities incurred in the ordinary course of business by Debtor since December 31, 2018, the date the Chapter 11 petition was filed ("Filing Date"), including amounts owed to vendors, suppliers and utility providers who have sold merchandise or furnished services to Debtor since the Filing Date are described in the Plan as Administrative Claims and will be paid by Debtor in accordance with the terms and conditions of the Plan. Holders of Administrative Claims are not impaired and are not entitled to vote on the Plan.

Claims arising from the rejection of executory contracts and unexpired leases, if any, are treated under the Bankruptcy Code as if they arose before the filing of the Chapter 11 petition and holders of those claims are Claimants entitled to vote on the Plan.

If a class or classes of Claimants does not accept the Plan, Debtor has the right to request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code, the "cramdown" non-acceptance of the Plan by one or more impaired classes or interests. Under that section, a plan or reorganization may be confirmed by the Bankruptcy Court if it does not discriminate unfairly and is "fair and equitable" with respect to the non-accepting class. The fair and equitable rule requires absolute priority in the payment of claims and interests with respect to the dissenting class or classes. *See* Article IX, "Confirmation Procedures," below.

This Disclosure Statement has been approved by order of the Bankruptcy court dated on or about _____, 2019, as containing information of a kind and of sufficient detail to enable a hypothetical reasonable investor typical of Claimants to make an informed judgment as to the acceptance or rejection of the Plan. This Disclosure Statement may be used in connection with the solicitation of votes on the Plan. Approval of this Disclosure Statement is not, however, a ruling by the Bankruptcy Court as to the fairness or merits of the Plan.

Confirmation by the Bankruptcy Court of the Plan in accordance with the provisions of the Bankruptcy Code will be considered at the scheduled hearing on the Plan. The hearing on the Plan may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing.

Any objection to the confirmation of the Plan must be in writing and served and filed as described below in Article IX.

Capitalized terms used in this Disclosure Statement, which are not otherwise defined in this Disclosure Statement, shall have the same meanings as given to them in the Bankruptcy Code or in the Plan.

## ARTICLE II.
## BACKGROUND

A. **DESCRIPTION OF BUSINESS**

    1. **General.**

        (a) **Pre-bankruptcy Operations and Business Structure.**

            (1) **Nature of Business and History.**

In 1996, the Debtor acquired the mobile home park now known as Pine Forest Ringgold, GA. This approximately 48 acre complex consisting of 110 mobile home sites at the present time, is located 210 Ardis Loop in Ringgold, Georgia. At the present time, the approximate payoff balance owing to Bayview Loan, the mortgage Holder is $510,000.00 with an estimated value of the park being $750,000.00. To the Debtor's knowledge, there are no other secured claims or liens associated with the property.

Until approximately 2017, Debtor was able to maintain payment on the loan associated with the mobile home park, however, significant water leaks which led to outrageous bills and repair costs and vacancy at the park, led the Debtor to fall behind on payments.

**(2)**                 **Debt Structure.**

Debtor's debt structure is all secured debt based upon the Deed to Secure Debt with Bayview Loan.

(b)                 **History.**

Since the purchase of the Mobile Home Park, Debtor has engaged in the development of the park as well as renting on a monthly basis lot spaces within the same.

(b)                 **Post-Bankruptcy Operation**

Debtor is still intending to continue with additional development of the mobile home park to create additional lot spaces while continuing to rent spaces already in existence at the park.

The Debtor has now entered into agreements with a manufacturing company who will finance directly with tenants the sale and installation of homes such that the Debtor will now have increased rent rolls going forward and be in a position to maintain all payments including the proposed mortgage payment associated with the Mobile Home Part.

Since the Filing Date, Debtor has operated the business and managed assets and affairs as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.   For a more detailed description of Debtor's post-petition operation and efforts to reorganize, *See* Article IV, below.

### B.    EVENTS LEADING TO BANKRUPTCY

The primary cause of Debtor's bankruptcy filing was non-payment or collection of rents causing the debtor to fall in arrears on the mortgage/Deed to Secure Debt with Bayview Loan which debtor felt was leading up to a potential foreclosure action against the property.

**ARTICLE III.**
**FINANCIAL INFORMATION**

A.    **ASSETS.**

    1.    **Real Property.**

Mobile Home Park located at 210 Ardis Loop, Ringgold, Catoosa County, Georgia.

    2.    **Personal Property.**
As of Filing Date, Debtor owned the following personal property.

(a)    **Cash and Bank Accounts.**

On the Filing Date, Debtor had a checking account with Wells Fargo Bank in Ringgold, Georgia.

(b)    **Accounts Receivable.**

As of the Filing Date, Debtor had no account receivables.

(c)    **Household Goods and Furnishing.**

N/A

(d)    **Wearing Apparel.**

N/A

(e)      <u>Jewelry.</u>

N/A

**(f)**      <u>Stock & Similar Interests.</u>

N/A

**(g)**      <u>Interests in Joint Venture.</u>

N/A

**(h)**      <u>Contingent & Unliquidated Claims.</u>

N/A

(i.)      <u>Licenses.</u>

N/A

**(j.)**      <u>Vehicles and Equipment.</u>

N/A

**(k.)**      <u>Office Equipment, Furnishings and Supplies.</u>

N/A

(l.)      <u>Inventory.</u>

N/A

**B.**      <u>LIABILITIES.</u>

As of the Filing Date, Debtor had non-priority unsecured debt as more particularly described below.

**1.**      <u>Administrative Claims Entitled to Priority Under Section 507(a)(1).</u>

N/A

2.      <u>Secured Claims.</u>

Bayview Loan holds a Deed to Secure Debt secured by the approximate 48 acres constituting the Mobile Home Park with an approximate outstanding balance of $510,000.00.

3.    **Secured and Unsecured Priority Claims.**

**Nonpriority Unsecured Creditors**

**N/A**

(g)    **Creditors Deemed Unsecured by Operation of Section 506(a) of the Bankruptcy Code.**

Under Section 506 of the Bankruptcy Code, a creditor is deemed to have a secured claim to the extent of the value of the creditor's interest in the collateral.   In the event that a creditor has an undersecured claim, that is, a claim which is greater in the amount than the value of the collateral securing the claim, such creditor will have a secured claim equal to the value of the creditors's interest in the collateral and an unsecured claim equal to the deficiency between such amount and the claim as allowed.   If a creditor is partially secured and partially unsecured, such creditor may have a right to elect to have the unsecured portion of its claim treated as secured pursuant to the provisions of Section 1111(b) of the Bankruptcy Code.   The consequences of such an election are described below.

(g)    **Section 1111(b) Election.**

A class of creditors may elect to have its claims treated in a accordance with Section 1111(b)(2) of the Bankruptcy Code.   The holder of a claim in a class electing Section 1111(b) treatment shall (i) have no unsecured claim, (ii) retain its lien against its collateral to the extent of its full allowed claim, less the amount of all payments received after the Filing Date, and (iii) receive payments that total at least the amount of its allowed claim and that have a present value, as of the Effective Date, equal to al least the value of that holder's collateral.

An election by a class under Section 1111(b) affects the treatment such claim must receive under the Plan in order for the Plan to be confirmed.   As more fully described herein, every class must either voluntarily accept the plan, or be unimpaired.   Failing this, the Bankruptcy Court must find that the Plan does not discriminate unfairly and is "fair and equitable" as to each non-accepting class.   A class electing Section 1111(b) treatment must receive deferred payments totaling the full amount of their allowed secured claim, but such deferred payments need only have a present value as of the Effective Date equal to the value of the secured creditor's interest in the collateral.   A creditor who makes the 1111(b)(2) election waives his unsecured claim against Debtor.

5.    **Pending Litigation.**

N/A

C.    **LEASES AND EXECUTORY CONTRACTS.**

Rental Agreements with current tenants.

# ARTICLE IV.
## THE REORGANIZATION PETITION AND
## POST-FILING CIRCUMSTANCES

**A.** **SIGNIFICANT CHAPTER 11 EVENTS.**

Debtor commenced it Chapter 11 case by filing a petition for relief on December 31, 2018.    Since the Filing Date, Debtor has continued to manage its affairs as debtor-in-possession under Section 1107 and 1108 of the Bankruptcy Code.

**8.** **Employment of Professionals**

Debtor generally has remained current on claims arising from the post-petition operation of its business.  At Confirmation, Debtor does not anticipate significant unpaid administrative claims relating to ordinary business expenses and costs.

Administrative claims against Debtor's estate primarily will be claims of professionals hired by Debtor.   Debtor has hired Harriss & Hartman Law Firm, P.C. as its general bankruptcy counsel.

**9.** **Agreements with Secured Creditors**

No agreements have been reached at this time, although a repayment plan with regards to arrearages owed to the sole secured creditor will be proposed in an attempt to restructure the entire outstanding balance on a long-term structure.

**A.** **POST-FILING OPERATIONS.**

Since, the Filing Date, Debtor has continued to operate its business and manages its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  Copies of Debtor's monthly operating reports, which reflect Debtor's post-filing operations, will be filed with the Bankruptcy Court and be available for inspection at the Clerk's Office.  In addition, Debtor has taken several steps to reorganize and emerge from Chapter 11.  A summary of key operational issues follows:

**1.** **Overview of Finances.**

Debtor's monthly operating reports to the Bankruptcy Administrator will be on file and available for review at the Bankruptcy Court.

As set forth in the Introduction to the Plan, and in Article VIII, below in the discussion on feasibility, the Debtor's plan to continue renting lots at the Mobile Home Park,

make on-going monthly mortgage obligations and pay additional funds to bring the account with Bayview Loan current.

## ARTICLE V.
## PREFERENCES, FRAUDULENT CONVEYANCES
## AND OTHER CAUSES OF ACTIONS

**A.    IN GENERAL**

Pursuant to Section 547 of the Bankruptcy Code, a debtor-in-possession may avoid as a preference a transfer of property made by the debtor to or for the benefit of a creditor on account of an antecedent debt while the debtor was insolvent, if that creditor received more than it would have received in a liquidation of the debtor under Chapter 7 of the Bankruptcy Code had the payment not been made and if the payment was made (i) within ninety (90) days before the date that the bankruptcy case commenced, or (ii) if the creditor is an "insider" as defined in the Bankruptcy Code, within one year before the commencement of the bankruptcy case.   A debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of its bankruptcy case.   The power to avoid preferences is subject to a number of exceptions set forth in Section 547 of the Bankruptcy Code, including one exception applicable to the payment of obligations in the ordinary course of business on ordinary terms.     Furthermore, it the transferee extended credit subsequent to transfer (and prior to the commencement of the bankruptcy case) for which the transferee was not repaid, such extension constitutes an offset against any otherwise recoverable transfer of property.   If a transfer is recovered by the debtor, the transferee retains a general unsecured claim against the debtor to the extent of the recovery.

At this time, no causes of action are know to exist.

Pursuant to Section 548 of the Bankruptcy Code, a debtor-in-possession may avoid a fraudulent transfer of property, including the granting of a security interest in property, made while the debtor was insolvent or which rendered the debtor insolvent, if the debtor received less than reasonably equivalent value in exchange for such property and if the transfer was made within one (1) year before the commencement of the bankruptcy case.  Pursuant to Section 544 of the Bankruptcy Code, a debtor-in-possession may avoid a transfer of property that is avoidable under applicable non-bankruptcy law.   Section 544 of the Bankruptcy Code enables a debtor to apply applicable state laws, including fraudulent conveyance laws, to avoid a transfer of property.

At this time, there are no known fraudulent transfers.

**B.    RETENTION AND ENFORCEMENT OF CLAIMS.**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, pursuant to Section 1123(b) of the Bankruptcy Code, Debtor shall retain and may enforce all claims and causes of action, including, without limitation, all avoidance actions arising under the Bankruptcy Code.

At this time, there are no known claims and causes of action.

## ARTICLE VI.
## SUMMARY OF THE PLAN

Debtor believes that through the Plan creditors, as a group, will obtain a greater recovery from the estate of Debtor than the recovery that would be available if the assets of Debtor were liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan will afford Debtor the opportunity and ability to maximize the value of her assets and pay her Allowed Claimants. Debtor believes, therefore, that the Plan is in the best interests of the creditors.

Capitalized terms used in the following summary of the Plan, which are not otherwise defined in this Disclosure Statement, have the same meanings as given to them in Article II of the Plan. *The following summary is offered for convenience only; it is not a complete description of the terms of the Plan. Creditors must review the Plan itself for a complete understanding of the Plan and disclosure of its terms. In the event of a discrepancy between the terms of the Plan and anything contained in this Disclosure Statement, the terms of the Plan shall control.*

### A.    OVERVIEW OF PLAN.

The Plan places the respective creditors of Debtor into separate classes and provides for the treatment of each such class. For purposes of reorganization, voting, and all matters related to confirmation, except as otherwise provided in the Plan, all Claims (except for Administrative Claims and Priority Tax Claims), and Interests shall be classified as set forth in Article III of the Plan. A claim is classified in particular class only to the extent that the Claim qualifies under the description of that class and is classified in other classes. A Claim also is classified within a particular class only to the extent that such Claim is an Allowed Claim in that class and has not been paid, released or otherwise satisfied prior to the Effective Date.

In general, the Plan places each secured creditor of Debtor in a separate class and places unsecured creditors of Debtor, in a single class. With respect to secured creditors, the Plan provides that the creditor's claims will be reinstated and that the creditor's rights will not be altered by the Plan or that Reorganized Debtor will issue new notes to the creditor and the creditor will retain its liens. With respect to unsecured creditors, the Plan provides for the pro rata distribution of the Unsecured Dividend, which is discussed further below. Finally, the Plan provides for the payment of certain administrative and priority claims.

### B.    CLASSIFICATION OF CLAIMS.

The Plan places Claims and Interests, except Administrative Expenses and Priority Tax Claims, in the following classes for the Debtor.

### 1.    Claims Against Pine Forest  (Classes 1 through 4).

(a)                    Class 1: Allowed Unsecured Priority Claims against Debtor
that are entitled to priority under Sections 507(a)(3), 507(a)(4), 507(a)(5),
507(a)(6) or 507(a)(7) of the Bankruptcy Code.

(b)                    Class 2: Allowed Secured Claims not otherwise classified.

(c)                    Class 3: Allowed Unsecured Claims against Debtor that are
not otherwise classified in Class 1, deficiency claims and any judgment
liens having timely filed Claims or other security interest against assets of
the Debtor not otherwise classified.

(d)                    Class 4: Interest of the Debtor.

C.      **TREATMENT OF CLAIMS AND INTERESTS.**

THE FOLLOWING SUMMARY IS PROVIDED FOR CONVENIENCE ONLY.
CLAIMANTS MUST REVIEW THE PLAN FOR A COMPLETE DESCRIPTION OF ITS
TERMS IN THE EVENT OF ANY DISCREPANCY BETWEEN THE TERMS OF THE PLAN
AND THIS DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL.

No Class is impaired.

8.      **Treatment of Certain Unclassified Claims.**

Except as specified in Article III of the Plan, and subject to the Bar Date
provisions of the Plan, unless otherwise agreed by the holder of an Administrative Expense
Claim and Debtor or Reorganized Debtor, each holder of an Administrative Expense Claim will
receive, in full satisfaction of such Claims.   Cash equal to the amount of such Administrative
Expense Claim on the Effective Date or, if such Claim is not allowed as of the Effective Date, on
a later date as more particularly set forth in the plan.

Administrative Expenses Claims based on liability incurred by Debtor in the ordinary
course of business will be assumed and paid by Reorganized Debtor pursuant to the terms and
conditions of the particular transaction without any further action by the holders of such Claims.

Notwithstanding the foregoing, Article III of the Plan creates bar dates for the filing of
requests for payment of Administrative Expenses and procedures for objections to such requests
for payment of Administrative Expenses.   Debtor reserves all rights, claims, and defenses in this
regard.

9.      **Classified Claims and Interests.**

(a)      **Unimpaired Classes of Claims and interests.**

Class 1 (Allowed Unsecured Priority Claims) will receive Cash equal to the amount of their Claims on the Effective Date.

Class 2 (Allowed Secured Claims not otherwise classified) will have their Claims reinstated on the Effective Date. The legal, equitable and contractual rights to which such Claims are entitled will be unaltered by the Plan.

Class 3 (Allowed Unsecured Claims) shall receive, Pro Rata, the Unsecured Dividend **until each Allowed Claim paid in full.**

(a)                                        provided, further however, that in no event shall payments exceed the total, aggregated amount of Allowed Unsecured Claims.

**THE FOREGOING SUMMARY IS PROVIDED FOR CONVENIENCE ONLY. CLAIMANTS <u>MUST</u> CONSULT THE PLAN FOR A COMPLETE DESCRIPTION OF ITS TERMS.**

**ARTICLE VII.**
**<u>INCOME TAX CONSEQUENCES</u>**

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OR CLAIMANT. ALL PARTIES SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The statements contained in this portion of the Disclosure Statement are based on existing provisions of the Internal Revenue Code of 1986, as amended ("Code"), Treasury Regulations promulgated thereunder, existing court decisions, published Revenue Ruling, Revenue Procedures and Technical Information Releases of the Internal Revenue Service ("IRS"), and legislative history. Any changes in existing law may be retroactive, may affect transactions commenced or completed prior to the effective date of the changes, and may significantly modify this discussion.

Legislation may be introduced in future sessions of Congress which could eliminate or alter some of the anticipated tax results of the Plan. No attempt has been made to evaluate in any detail the impact, which may substantial, or any proposed legislation on the Plan.

The following is intended to be only a summary of certain tax considerations under current law which may be relevant to the Creditors of the Debtor. It is impractical to set forth in this Disclosure Statement all aspects of federal, state, and local tax law which may have tax consequences to the Debtor and their Creditors.

Some of the tax aspects discussed herein are complex and uncertain. Moreover, the discussion below is necessarily general, and the full tax impact of the Plan upon the Creditors will vary depending upon each Creditor's individual circumstances. Therefore, all the Creditors

should satisfy themselves as to the federal, state, and local tax consequences of the Plan by obtaining advise solely from their own advisors.

CREDITORS SHOULD NOT CONSIDER THE DISCUSSION WHICH FOLLOWS TO BE A SUBSTITUTE FOR CAREFUL, INDIVIDUAL TAX PLANNING AND ARE EXPRESSLY CAUTIONED THAT THE INCOME TAX CONSEQUENCES TO THE CREDITORS ARE COMPLEX AND VARY CONSIDERABLE DEPENDING UPON EACH PARTY'S CIRCUMSTANCES. ACCORDINGLY, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS WITH REGARD TO THEIR PARTICULAR TAX SITUATIONS.

## D.      THE PLAN.

The terms of the Plan contemplate that holders of Allowed Claims shall be **paid regular payments on a monthly basis.**

## E.      CREDITORS.

1.      To the extent that creditors receive payments under the Plan as interest, such creditors will recognize income under Section 61(a)(4) of the Code.

2.      To the extent that, pursuant to the Plan, Creditors receive cash payments from the Debtor in satisfaction of their claims, such Creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

3.      The gain or loss to be recognized by such Creditors will be either ordinary income or capital gain depending on, among other factors, the status of the Creditor and the nature of claim in the hands of the Creditor.

4.      Section 166 of the Code permits the deduction of debts which have become totally or partially worthless.  Therefore to the extent that certain Creditors will receive less than full payment from the Debtors with respect to the debt owed such Creditors, such Creditors may be able to deduct such bad debts for federal income tax purposes. The nature of the deduction for a bad debt depends on its classification as either a business or nonbusiness debt.  For non-corporate taxpayers, nonbusiness bad debts are deductible as short-term capital losses, and so are subject to Business bad debts and bad debts held by corporate taxpayers are deductible as ordinary losses.  A bad debt is deductible to a creditor at the time it becomes wholly or partially worthless determined under the particular facts and circumstances.

## C.      DEBTOR.

### 1.      Establishment of Debtor's Estate.

Pursuant to Section 1398(g) of the Code, the bankruptcy estate Debtor ("Debtor's Estate") was established as a separate taxpayer from Debtor, and succeeded to the following attributes of Debtor, if any, as of the first day of Debtor's taxable year in which the case commenced: net operating loss carryovers; carryover of excess charitable contributions; tax benefit items; carryovers of any tax credits, capital losses; in the case of any asset acquired by

Debtor's Estate from Debtor other than by sale or exchange, the basis, holding period and character the asset had in the hands of Debtor; the method of accounting used by Debtor; unused passive activity losses and credits; and losses or deductions suspended due to Debtor's failure to be at-risk under Section 465 of the Code. Upon the termination of Debtor's Estate, Debtor will succeed to take into account the foregoing items which remain unused if any.

### 2.      Income From the Discharge of Indebtedness

As a general rule, Section 61(a)(12) of the Code provides that gross income for federal income tax purpose includes income from the discharge of indebtedness. However Section 108(a)(1) of the Code specifically excludes gross income discharge of indebtedness which occurs in a title 11 case. Therefore, Debtor's Estate will not recognize income on the discharge of indebtedness pursuant to the Plan.

Section 108(b) of the Code, however, provides that the amount excluded from gross income under Section 108(a)(1) must be applied to reduce, in order, the following tax attributes of Debtor's Estate: (a) net operating losses and net operating loss carry-overs; (b) general business credits; (c) minimum tax credits; (d) capital loss carry-overs; (e) the basis of the discharge, pursuant to Section 1017(b)(2) of the Code); (f) passive activity loss and credit carry-overs; and (g) foreign tax credit carry-overs.

Alternatively, Debtor's Estate may elect under Section 108(b)(5) of the Code to apply any portion of the reduction referred to above to a reduction of the taxpayer's basis in depreciable property.

The effect of the reduction of tax attributes is to defer the reorganization of income on the discharge of indebtedness income until such time as the reduced tax attribute would have otherwise been available to Debtor's Estate to decrease taxable income.

### 2.              Sale of Designated Assets.

To the extent the Plan contemplates the sale of assets of Debtor's Estate after the Effective Date of the Plan, Debtor's Estate will recognize gain and loss on such sales equal to the difference between the amount realized on such sales and Debtor's Estate's tax basis in the assets sold.

### B.    STATE AND LOCAL TAXES.

In addition to the federal income tax consequences described above, Creditors should consider potential state and local tax consequences which are not discussed herein.

THE FOREGOING ANALYSIS IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY BECAUSE CERTAIN OF THE INCOME TAX CONSEQUENCES OF THE PLAN WILL NOT BE THE SAME FOR ALL CREDITORS, DUE TO THEIR RESPECTIVE DIFFERING SOURCES AND TYPES OF INCOME AND DEDUCTIONS, AND OTHER FACTORS. ACCORDINGLY CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

**A.**    **PLAN-IMPLEMENTATION.**

    **2.**    **In General.**

Debtor intends to fully fund the Plan through the collection of rents on mobile home spaces within the park   and through revenues generated by the ongoing operation of its business.

The Plan provides for a dividend to unsecured creditors of a pro-rata basis although Debtor does not anticipate any unsecured claims being filed

Debtor does not or cannot warrant or guarantee the accuracy of any estimates of the Net Profits. However, Debtor believes it has sufficient ability to continue collecting rent  to fund the plan.

Debtor's estimates show that the Plan is feasible and will result in payment to unsecured creditors over the 60 month period.

    **3.**    **Treatment of Liens.**

Subject to the provisions of any contract, instrument, release or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens except judicial liens, or security interests against the property of Debtor's Estate shall attach to such property or to the proceeds of the sale or other disposition of such property, as applicable.   Judicial liens shall be voided since they do not now attach to any value in any assets.

**B.**    **RISK FACTORS.**

The Plan is based on future collection of rents by  the Debtor.   The primary risk factor associated with the Plan is that, due to the economy, Debtor may not generate sufficient cash from collection of rents  listed above in Article VIII.   A. 1. to pay all Class 3 claims in full.

In spite of these risk factors, Debtor expects to generate sufficient capital to meet the Plan needs. *See* discussion above.

## ARTICLE IX.
## CONFIRMATION PROCEDURES

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**A.**    **SOLICITATION OF VOTES**

As required by the Bankruptcy Code, Debtor is soliciting acceptance of all classes of Claimants that are "impaired" under the Plan. However, no classes are impaired.

The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class who actually cast ballots for acceptance or rejection of the plan; that is, acceptance occurs only if two-thirds in amount and one-half in number of the claims voting cast their ballots in favor of acceptance. A Claimant's vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the Claimant's acceptance or rejection was not solicited or procured in good faith or accordance with the provisions of the Bankruptcy Code. Any creditor of an impaired class (a) whose claim has been scheduled by Debtor in the schedules filed with the Bankruptcy Court (provided that such claim has not been scheduled as disputed, contingent or unliquidated), or (b) who has filed a proof of claim (unless such claim has been disallowed for voting purposes by the Bankruptcy Court), is entitled to vote.

B.   **CONFIRMATION HEARING.**

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation on the Plan at which any party in interest may object to confirmation.

The hearing on confirmation of the Plan has been scheduled for _____. The hearing on the Plan may be adjourned from time to time by the Bankruptcy Court without further notice except by announcement made at the hearing. Any objection to confirmation must be made in writing and filed with the Bankruptcy Court and served upon the following on or before _____:

Clerk, United States Bankruptcy Court
Eastern District of Tennessee, Southern Division
31 East 11th Street
Chattanooga, TN 37402

Brent James
P. O. Drawer 220
Rossville, Georgia   30741

Office of the Bankruptcy Administrator

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

C.   **CONFIRMATION.**

At the hearing on confirmation of the Plan, the Bankruptcy Court shall confirm the Plan only if the Plan meets the requirements of Section 1129 of the Bankruptcy Code. Section 1129 includes several requirements for confirmation of a plan. The more significant requirements are discussed as follows:

**B.**     **Best Interest Test.**

Before the Bankruptcy Court will confirm the Plan, the Plan must meet the best interest test. The best interest test requires that with respect to each impaired class of creditors under the Plan, each Claimant either (a) has accepted the Plan; or (b) will receive or retain under the Plan on account of its claim property of a value, as of the effective date of the Plan, that is not less than the amount sum claimant would receive or retain if Debtor was liquidated under chapter 7 of the Bankruptcy Code. In other words, if one or more Claimants that are members of an impaired class vote to reject the Plan, the Court will confirm the Plan only if the distribution to such Claimants under the Plan is not less than the distribution that the Claimants would receive under a Chapter 7 liquidation of Debtor.   Inasmuch as Debtor proposes to pay all Claimholders to the extent of their Allowed Claim in full, Debtor believes that the Plan meets the best interest test.

To determine if the Plan is in the best interest of each impaired class, the Bankruptcy Court will compare the present value of the distributions from the proceeds of the liquidation of Debtor's assets and properties (after subtracting the amounts attributable to the secured claims discussed above) with the present value offered to each of the classes of unsecured claims under the Plan.   Unless it specifically determines otherwise, the Bankruptcy Court will treat all pre chapter 11 general unsecured claims, which would have the same rights upon liquidation, as one class for the purposes of determining the potential distribution of the liquidation proceeds resulting from a chapter 7.   The distributions from the liquidation proceeds would be calculated Pro Rata according to the amount of claim held by each creditor.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the present case, including the costs and expenses of liquidation under chapter 7, the uncertainties inherent in a chapter 7, and the adverse affect that a chapter 7 would have on the value of certain of Debtor's assets, Debtor has determined that a chapter 7 liquidation would yield no payments to unsecured creditors.   The basis for Debtor's determination is set forth with more particularity in the liquidation analysis in Article X below.

Based on the foregoing analysis and given the elimination of uncertainties inherent under chapter 7, Debtor believes the confirmation of the Plan will provide each Claimant with a greater recovery than such Claimant would receive pursuant to liquidation of Debtor under chapter 7 of the Bankruptcy Code.   Accordingly, Debtor submits that the Plan meets the best interest test.

**C.**     **Acceptance.**

Each impaired class of Claimants must accept the Plan or the "Fair an Equitable Test" described below must be met with respect to each impaired Class that does not accept the Plan by the requisite vote.

**D.**     **Fair and Equitable Test.**

In the event the class of Claimants does not accept the Plan, Debtor must demonstrate to the Bankruptcy Court , as to each non-accepting class, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the class.   A Plan does not discriminate unfairly if no class receives more than it is entitled to for its claims or interests. The Bankruptcy Code establishes "fair and equitable" tests for unsecured creditors as follows:

> Unsecured Creditors: Either (i) each impaired unsecured creditors receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the holders of claims interest s that are junior to the claims of the dissenting Class will not receive any property under the Plan.

## D.      CONSUMMATION.

The Plan will be consummated and the distributions made if the Plan is confirmed   the Plan is to be implemented pursuant to the provisions of the Bankruptcy Code. Implementation requires an order of the Bankruptcy Court confirming the Plan.

## ARTICLE X.
## ALTERNATIVES TO CONFIRMATION OF THE PLAN

If the Plan is not confirmed and consummated, the theoretical alternatives include (a) liquidation of Debtor under Chapter 7 of the Bankruptcy Code, or (b) an alternative plan of reorganization or (c) Dismissal of case.

## A.      LIQUIDATION UNDER CHAPTER 7.

If the Bankruptcy Court does not confirm a plan or reorganization, the Court may convert Debtor's case to a case under Chapter 7 of the Bankruptcy Code. Under chapter 7, a trustee would be elected or appointed to liquidate the assets of Debtor for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Without limitation, secured and priority claims would be paid in full before any distribution to unsecured creditors. Debtor believes that liquidation of Debtor's assets under chapter 7 would result in a full distribution to unsecured creditors over time.

The distribution to unsecured creditors under the Plan will at least equal the distribution to unsecured creditors in a liquidation.   As discussed above, the Plan is feasible and confirmable.   Unsecured creditors will receive better treatment under the Plan than under a liquidation of Debtor's assets under chapter 7.

## B.      ALTERNATIVE PLAN OF REORGANIZATION.

If the Plan is not confirmed, Debtor or any other party in interest could attempt to formulate a different plan.   Such a plan might involve, either a reorganization and continuation of Debtor's business or an orderly liquidation of its assets.

## C.    IF THE PLAN IS NOT CONFIRMED, THE COURT COULD DISMISS THE CHAPTER 11

### ARTICLE XI.
### RECOMMENDATION

Debtor believes that the Confirmation and implementation of the Plan is preferable to alternatives described above because the Plan will provide a recovery to all Allowed Claimants. In addition, any other alternative would involve significant delay, uncertainty and substantial additional administration.

Dated the ___ day of February, 2019.

/s/ David Ott
Pine Forest Associates, LP
Partner

/s/ Brent James
BRENT JAMES
Attorney for Debtor

Brent James
200 McFarland Bldg.
P. O. Drawer 220
Rossville, GA. 30741
Telephone: (706) 861-0203
Facsimile: (706) 861-6838
brent.james@harrisshartman.com
Attorney for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the Disclosure Statement has been served upon the parties listed below either electronically or by placing the same in the United States Mail with sufficient postage thereupon to carry it to its destination.

United States Trustee
31 E. 11th Street, 4th Floor
Chattanooga, TN 37402

V. Davit Ott
Pine Forest Associates LP
P.O. Box 6628
Malibu, CA 90264

Bayview Loan Servicing
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, FL 33146-1837

Bayview Loan Servicing LLC
c/o Joel Callins, Esq.
The Callins Law Firm LLC
101 Marietta Street
Suite 1030
Atlanta, GA 30303-2780

Bayview Loan Servicing LLC
c/o Joel A. J. Callins, Esq.
The Callins Law Firm, LLC
101 Marietta Street, Suite 1030
Atlanta, GA 30303-2780

Catoosa County Utility District
1058 Old Mill Road
Ringgold, GA 30736

Internal Revenue Service, CIO
PO Box 7346
2970 Market Street
Philadelphia, PA 19104-5002

Pine Forest Associates LP
Pine Forest Associates, L.P.
PO Box 6628
Malibu, CA 90264-6628

Shapiro, Pendergast & Hasty, LLP
Attorneys at Law

211 Perimeter Center Pkwy,N.E., Ste. 300
Atlanta, GA 30346

This 12th day of February, 2019.

/s/ Brent James
BRENT JAMES,
Attorney for Debtor